The next case today is Alfred Morin v. William E. Lyver et al., appeal number 201287. Attorney Jensen, please introduce yourself for the record and proceed with your argument. Thank you, Your Honor. This is David Jensen for the plaintiff appellate, Alfred Morin. Preliminarily, could we reserve four minutes of time for rebuttal, please? You want four minutes of your ten? Maybe three. Let's do three minutes. Okay. All right. Thank you, Your Honor, and may it please the court. The issue here is a prohibition on firearms ownership that goes far beyond what the Supreme Court has identified as presumptively lawful in Heller. The prohibition here attaches to misdemeanor convictions, and most significantly, it attaches to misdemeanors that don't involve the use or threaten the use of violence. Yeah, but it does not attach to all misdemeanor convictions. There is narrowing language in the prohibition, is that correct? That is correct. Misdemeanor has to involve the use of firearms and also has to carry with it a prison term of at least a year, potentially carry with it. It's not a prison term of potentially a year, it's simply a potential prison term. Prison term. In other words, administrative-type sanctions, something that's only punishable by a fine. That type of misdemeanor wouldn't be a disqualifying event under the statute. Yes, Your Honor, that's correct. But one thing that should be noted here is that almost all firearms offenses in Massachusetts, including relatively minor regulatory ones, carry potential terms of imprisonment. So literally, if I go deer hunting and I don't have 500 square inches of blaze orange on, my hat only has 400 square inches, that's an offense that carries 30 days in jail. If you go hunting and you forget your hunting license, that also carries 30 days in jail. So if someone gets that ticket, pays a $100 fine, and says, okay, I'm done with this, they wind up being prohibited from getting an LTC for the rest of their life, and I actually know people that has happened to in Massachusetts. Massachusetts also has a bunch of misdemeanors relating to storage of weapons, relating to quantity of ammunition, and the like, which are only punishable by fines. The storage of firearms and ammunition provisions are actually felony provisions, meaning that... No, some of them are, but there are others that are punishable only by fines. The only offense I know of that is punishable only by a fine is the one that the Attorney The one that pertains to transporting a firearm in a manner that is not as specified in regulations. The point being, the vast majority of crimes you could be convicted of in Massachusetts that would involve possession or use of a firearm that are not already covered by prohibitions that are in place when the general court is adopting this law in 1998, are going to involve crimes for which there's a potential term of imprisonment. So it's not actually that narrowing. As a side note, but a pertinent one, there are all sorts of crimes that remain on the books all over this country that carry potential terms of imprisonment, even though in the modern real world we live in, no one's actually going to get sent to prison for the weekend because they got caught going 20 miles an hour over the speed limit. What's significant here is, what I'm going to submit to you is that there are four pertinent or directly pertinent appellate court decisions to this case, and that for the facts in the record presented here, we can simply proceed from the assumption or the understanding that all four were decided correctly, and based on that, there's really only one resolution here. But first, we have this court's decision in United States v. Torres-Rosario, where the court upholds the prohibition on felons possessing firearms, but says, reserves the possibility that for particular nonviolent offenses, this may not stand up. For the person there who's got multiple drug trafficking convictions, fine, that's constitutional. For someone else, it might not be constitutional. In United States v. Booker, this court upholds the prohibition on those with misdemeanor domestic violence convictions. It does so by relying on the Seventh Circuit's decision in United States v. Sconeen in saying if we're going to expand these categories of prohibited persons to go beyond what's been identified as presumptively lawful, we're going to need a strong showing. The court finds the strong showing by looking at substantial research that indicates high access to weapons and acts of violence in the future. At the other extreme, we have the Third Circuit's decision in Binderup v. Attorney General. The issue there are two individuals who have misdemeanor convictions that carry terms of imprisonment, but they're not offenses that involve acts of violence or acts of threatened violence. One person's got convictions for illegally carrying a weapon in DUI, the other person's got a conviction for indecent liberties with a minor or corrupting the morals of a minor, as I recall correctly, and the reason that those prohibitions don't stand is because when the Third Circuit looks at what was actually cited to say, well, this is why these people are so dangerous, we have to bar them forever, it doesn't hold up. The district court's decision turns on this study, Wintermute et al., prior misdemeanor convictions, looking at handgun purchasers in California back in the 70s, but significantly what it actually shows is that while individuals with misdemeanor convictions that involve misdemeanor convictions to engage in future acts of violence, individuals with weapon-related misdemeanor convictions are actually somewhat less likely than those with just general misdemeanor convictions to re-offend in the future. So specifically, if you look in Table 8 of that study, it says that individuals with a prior misdemeanor conviction for a weapons offense are 4.4 times more likely to offend, but that individuals with a prior offense, a prior misdemeanor conviction that involves violence is 8.9 times more likely to offend. What is the significance of that to the Second Amendment inquiry is the idea that you can only impose the requirement as to violent offenses, because Judge Barrett doesn't take that view even in her dissent in Cantor. She takes the view that history shows that if there's a basis for thinking that there is a basis for thinking that that's enough. So I would have thought under that standard, absent some contrary history, none of which is in your brief, that we would conclude that if we just applied that, that there would be a reason to think that, well, a study showing that you're much more likely to misuse a weapon if you prior in the past misused it would be enough to suggest that there's a reason to think this is a class of persons who would misuse the weapon. That would be the strong showing. Well, because what the showing actually shows is that an individual with a misdemeanor conviction for a weapons offense is not analogous to an individual with a misdemeanor conviction for an act of violence. Yeah, but again, why is that significant if it is a legitimate public safety basis for regulating how people use weapons that they misused them in the past? You're not saying that the crime itself, the misdemeanor itself, is a violation of the Second Amendment. So if those are legitimate regulations of gun rights, then the concern that somebody will misuse it in the same way again, or in a related way, why isn't that within just exactly what Judge Barrett says from the history, which is the history shows that it's permissible to regulate a class based on their misuse, the concern about their misuse of the weapon. Because there would seem to be evidence that there would be a reason to think that there's a strong showing that persons who misused it in the past would misuse it again. Because the evidence about misuse of a weapon doesn't show that someone with a weapons-related misdemeanor conviction is any more likely to misuse a weapon than someone with a garden variety misdemeanor conviction. But isn't the real question whether someone with a weapons-related misdemeanor conviction is more likely than the ordinary person, a person without any conviction, to re-offend? If that's sufficient, then it's constitutional to bar anyone with any misdemeanor conviction, because what this study is indicating is that any misdemeanor conviction reflects some degree of increased risk. No, not with respect to weapons offenses. The concern is that what Judge Barrett says from the history, and there's just one possible approach to the strong showing, but you haven't developed in detail what you mean by what would be the requirement if we look at text and history. So if I take the dissent in Cantor, which would seem to be one available view of it, and if we took that approach, what that history in her view suggested is that the history demonstrates that there was a history of regulation of classes of persons who were thought to be likely to misuse the weapon. So the evidence before us suggests that there is reason to think that people who have misused it in the past will misuse it again, not simply that they'll commit some other misdemeanor, that they'll engage in a weapons offense, isn't that right? Well, actually, nothing has been submitted that shows what the possibility is of reengaging in another weapons offense by someone who has a prior weapons-related conviction, or if it is, I missed it, but what this is, and everything is a matter of degree, people who are between the ages of 16 and 25 are likely four times more likely to engage in violent crimes than the general population. That doesn't mean that you couldn't just put those people in prison, or for that matter, take Second Amendment rights away from young adults simply because objectively they pose some increased risk relative to someone else. The actual coefficients that are coming out from this Table 5 in this study that we included in the appendix, because we thought it was important to get this in front of you to look at what the actual evidence is, is that in terms of the risk of a new offense, just any new offense, new arrest for a conviction, someone with a weapons-related misdemeanor conviction has the same or roughly the same probability as someone with a misdemeanor that does not involve violence. So analogizing this to prohibitions on misdemeanors that involve violence that are being justified by showing, well, these have a really high risk of reoffending, even relative to other misdemeanors, doesn't support the reverse proposition that, well, so anything that's a misdemeanor is going to justify a lifetime ban. But I realize I'm way over my time right now, so unless there's something else, I think I should yield. Okay, any further questions? Thank you. Well, you've reserved three minutes. Thank you. Thank you, Attorney Jensen. Please mute your audio and video at this time. And Attorney Kobach, please introduce yourself on the record. Good morning, Your Honors. Assistant Attorney General Julia Kobach for the Commonwealth of Massachusetts. Together, the license to carry, FID card, and permit to- Hold on one second. I apologize, Ms. Kobach. I'm not seeing Judge Delgado. Oh, there you are. Okay, great. Go ahead. Sure, Your Honor. So together, the license to carry, permit to purchase, and FID card statutes adopt a nuanced set of restrictions on access to firearms for people with weapons-related misdemeanor convictions. As applied here, in the interest of public safety, the statutes disqualify individuals like Dr. Morin from obtaining a license to carry or from purchasing handguns because as a category, those individuals pose a heightened risk of committing criminal offenses in the future. But at the same time, Your Honors, the statutes also provide a pathway to gun ownership for individuals in Dr. Morin's category. Under the FID card statute, after a period of rehabilitation, those individuals may be able to purchase, possess, carry non-large capacity rifles and shotguns for self-defense or any other lawful purpose. So the district court correctly ruled that this carefully crafted statutory scheme- Is there record of evidence about the likelihood of a misdemeanor offender with respect to a weapons offense? Yes. Re-offending with respect to weapons. The Wintemute study looks at their risk of re-offending, period, or re-offending in a violent way or a non-violent way. It doesn't look at the risk of re-offending specifically with a weapon. But the test under Gould, it's not that granular. So the question is, is there a reasonable fit, a substantial relationship between the statutory scheme on the other? And in Booker and Gould and in cases where this court has applied intermediate- So I just want to understand your position. Let me give you, there's three different possibilities. One is, well, the prior offense provides a reason to be concerned that they'll offend in the same vein in the future. Another possibility is it shows that they'll offend in a violent way in the future. Either of those, I could see how that would be helpful to your case. The third is that it shows simply that they'll commit some kind of offense. We don't know what kind. That would seem rather less obviously helpful unless you think otherwise. I think your Honor should look to the analysis that was done in Booker, which is the most on-point case here. And the court said there, look, there's research that someone who has committed a domestic violence misdemeanor in the past is likely to commit violent offenses in the future. And we know that mixing access to guns with this category of individuals produces harmful outcomes, right, is a risk to public safety. So it didn't require- There's about four minutes left. Four minutes. Thank you. It didn't require evidence that those future criminal offenses would be done with a gun. It just said, as a common-sense proposition, we understand that when you have a category of individuals that, according to research, is more likely to commit violent conduct than individuals without those convictions, we know that mixing access to guns with that group is a risky proposition. I follow that, but that sounds like what you're saying is what's key is that there's evidence that this class of offenders are more likely to commit violent offenses than persons without this offense, not that they're just more likely to commit any offense. Well, I think any offense is important, but I think violence in particular, I mean, there is evidence that they're more likely to commit violent offenses. There's also evidence that there's- I guess just to follow the thread, what I took your opponent to be objecting to is that if we were to rely on the logic that there's evidence in the record showing that they're more likely to commit violent offenses, that's true of all misdemeanors. So what is then the significance that this was a prior weapons offense? That's what would be helpful for me to understand. Is that significant to your argument? If it is, how is it? It is, and it's because the question for the court is, is there a fit between the statutory scheme and the public safety objectives? And Heller is interested. Are we looking at a class of law-abiding, responsible citizens? So I think the likelihood of committing future offenses goes to law-abiding, but responsible means responsible with guns, as I understand it. And the fact that this category of individuals has shown themselves not to be able to comply with gun safety laws indicates they're not likely to be responsible with firearms in the future. So I think that the fact that they're narrowly defined to have committed a weapons offense is relevant. And Judge Selye, you asked about the fact that also a term of imprisonment is required under the statute, and that's important too. It's not just one statute in Massachusetts that imposes only a fine for weapons-related offenses. There are others. I'd point your honors to General Laws Chapter 140, Section 131A, also General Laws Chapter 140, Section 129B-12. And so here you have the legislature is narrowly crafting this statute to apply to a class of individuals that has proven themselves unlikely to comply with weapons gun safety laws in the future. But I think that's what the questioning has been getting at. You've got the prior convictions for inappropriate conduct involving firearms. The statistical evidence, I take it, does not show that there is a greater likelihood that someone with that background will commit a future firearms offense. But there is evidence that someone with that background will commit a future offense involving violence. Do I understand you correctly? Well, so I'd say a couple of things. The future offenses that are nonviolent, there's evidence about that. And I think in general, weapons-related offenses are, unless they involve violence, are categorized among the nonviolence public order offenses. So there's evidence that, in fact, this category of people is much more likely to commit nonviolent future offenses. But of course, nonviolent future offenses, the great majority of them don't involve firearms at all. I agree with that, Your Honor. But I want to make sort of a more general point, which is that this is not a case like Gould's, where you had competing studies that the parties proffered and this court reasonably deferred to the legislature to make predictive judgments about what was important for public safety. You have a large body of empirical evidence in this case that all points to the conclusion that the category drawn by the statutes here is likely to pose a risk to public safety in the future. And no evidence on the other side. So Dr. Moran hasn't come forward with any evidence. Well, but I think the thing that's just hanging me up and trying to figure out how to analyze this scheme is you don't seem to be taking the position and aren't asking us to take the position that this measure would be equally constitutional if it applied to any misdemeanor for any misdemeanor that had a potential jail sentence. Presumably that's in part because of our language in Torres Rosario, etc., because of the breadth of that. So the question is, once we say, well, we're not resting on that ground, what is it that I'm hearing you, it's not anything about their likelihood of committing a violent offense or any offense relative to misdemeanors generally. It's that they're more likely than the ordinary person to do it. And unlike the ordinary misdemeanor, they've already demonstrated that they don't comply   So it's that second piece, which is not a statistical point, that might be helpful. Where is that coming from in the analysis? What precedent suggests that we're allowed to say that the legislature can make a legitimate judgment that your past misuse of the firearm, your past violent conduct, coupled with evidence that, unlike the ordinary liability citizen who's never gotten in trouble, you're more likely to commit some crime in the future, those two together provide the strong showing that's necessary. Well, I think your honor's right. And so it is the fact that he has a history of violating firearm safety laws in particular that contributes to the fit. This particular type of statute has not come up in the case law that I'm aware of, but I think it's sort of a common sense proposition. You have a person who has a history of not complying with gun laws. And so it's reasonable for the legislature to make a predictive judgment that that category of individuals might in the future also not comply with firearm safety laws. But I want to make one more... Time has expired. You can finish the point. Sure. I just wanted to emphasize the fact that the legislature did provide the safety valve in the FID card statute to allow individuals in this category to regain access to certain guns for use in self-defense. Not the handgun that Heller made such a point about. Not the handgun, but guns that are perfectly suitable for self-defense and other lawful purposes. Thank you. Thank you. Thank you, Attorney Austin. At this time... I'm sorry, would Attorney Austin please unmute her device and introduce yourself on the record to proceed. Good morning, Your Honors. Attorney Janelle Austin, KP Law, representing the Chief of Police for the Town of North Borough. May it please the Court. The District Court in this case correctly entered judgment in favor of Chief Liver. The Chief incorporates the Commonwealth's arguments regarding the constitutionality of the specific firearm statutes at issue, specifically 140, Section 131, D2D, a specific provision, as well as Chapter 140, 131A. As Your Honors are certainly aware, this is a discreet legal issue. Mr. Moran has disqualifying criminal history that the legislature has enumerated specific categories based on his prior firearms weapons offenses. Your Honors, in addition to incorporating the arguments of the Commonwealth with respect to the constitutionality of the statute, I briefly just wanted to address the fact that it's our position that the Chief cannot... The Chief cannot be held to simply following the legislature's policy objectives with respect to these enumerated categories of disqualifications. Your Honors, simply put, there's no statutory... I'm sorry, there's no municipal policy or customer practice at issue. This is not a suitability issue, as Your Honors are aware. There's simply no discretion on behalf of the Chief of Police whether to deny or grant the permit to purchase. That's an issue in this particular case, unlike our prior case. And we would submit, Your Honor, that the Chief had no discretion and is simply following the dictates of state law. Based on the fact that Mr. Moran, who was previously convicted of these weapons-related offenses, the legislature has determined that it's not in the best interests of public safety, simply put, based on that prior conduct. And the Chief was required and had no discretion to deny the firearms permit to purchase in this case. There was no discretion, Your Honor, and we would submit that the claims against the Chief, not only on the constitutionality of the statutes at issue, statutory provisions at issue, but also with respect to the claims against the Chief were properly dismissed by the district court, and we would ask this court to affirm those. Thank you. Thank you. Any further questions from the panel? I think we've got some rebuttal time for the appellant. Yes, we do. Thank you. Attorney Jensen, if you could please unmute your audio and video at this time. You have a three-minute rebuttal. Please reintroduce yourself on the record. Okay, thank you. So, again, this is David Jensen for the Plaintiff Appellant. So, what this is really homing in on very quickly is that the rationale that's being offered for this prohibition is that, okay, fine, just having a misdemeanor isn't enough, one, and two, this isn't a case like Booker or Schrader where we're talking about a misdemeanor that intrinsically involves the threat of violence. What's being offered to justify this is the simple, basic fact that the person has at But the only statistical research that goes to this issue, which is this Wintermute study, says the fact that you have a past conviction, misdemeanor conviction, for a weapons offense doesn't mean that you pose any different risk profile than anyone else with a misdemeanor. I think, Mr. Jensen, that that may be a little too narrow a way to look at it. First of all, legislatures can make common sense judgments. They don't necessarily have to have statistical backing. But let me propose to you that we've got a situation here where the Massachusetts legislature has statistics in front of it, empirical evidence, that shows that people who commit misdemeanors such as those committed by your client are more likely to violate the law, not necessarily in a firearm sense, but violate the law in the future. And they couple that with what I suggest to you may be a common sense inference that someone who has been convicted of a misdemeanor potentially involving a prison term, involving the use of firearms, has demonstrated that he is a person who is likely, at least to some degree, not to be fully trusted with weapons, and that when you combine those two facts, the fact of the prior conviction and the common sense inference to be drawn from it, with the empirical evidence about the likelihood of misdemeanors reoffending, I'm struggling with the notion of why that isn't enough for the Massachusetts legislature to put into effect the prohibition that it did. Okay, well, Your Honor, first and foremost, it's the government that bears the burden of showing that the justification or that the burden is justified. And the statistical evidence we've got doesn't meet that showing. So what we're really talking about is the proposition that we're going to take supposition about what common sense says and disregard what the actual research says. No, we're going to take common sense inferences coupled with what statistical information is available, which shows that misdemeanors are more likely to break the law in the future than those who have a clean record. That's what the statistical evidence, even on your account, shows. I agree with that, although I don't think it's that big of a differential, but significantly, we're not talking about a prohibition for any misdemeanor conviction. I know that, because you try to keep breaking these two things apart, and I'm trying, in fairness for the Commonwealth, I'm trying to get you to focus on the two of them together, because to the extent the Commonwealth's argument has force, in my mind, it's because of that combination that what statistical evidence there is, which granted, is not directly on point. Together with what I suggest many people would think is a common sense inference that someone who has proven, as demonstrated by a conviction in a court of law, that he cannot abide by the firearms laws in the past, is more likely to re-offend in the future than someone who's got a perfect record handling firearms. Well, preliminarily, is the mere existence of an increased likelihood of offense enough? Because if it is... That goes to a question, doesn't it? That goes to a quintessentially legal question, as to whether there's a reasonable relationship between the government's interest and the justifications that are deducible from the record in support of the law. That's a question I'm not presuming to try and answer during this oral argument. What I'm trying to do is state the Commonwealth's case, best case, as I understand it, and trying to get you to meet it head-on, and tell me why that best case doesn't work. Because if you have a constitutional right to do something, then you can't take it away simply on account of any violation of the law. It's going to have to meet some threshold. What's been upheld so far in the federal courts, and what has been disallowed,  and second, if we're talking about a misdemeanor, is their violence. I'm not disclaiming the possibility that on an appropriate record, the government might be able to justify a prohibition that's drawn on a misdemeanor conviction where the conduct doesn't concern violence. I'm saying they haven't done it here. The record that's here is that any misdemeanor conviction that's not violent would have to be sufficient to take someone's rights away, which is going to include offenses. I'll give you one last chance at it, and then we'll wrap it up, because I think we're past your time. Since that's not the Commonwealth's position, and I understand you're saying maybe, ineluctably, it has to be, given the evidence they've put forward. I think, implicit in your position, you just tell me if this is wrong. There's something about the nature of the misdemeanor firearms offense that you're suggesting cannot itself provide any basis for a common-sense inference of concern about how it would be used in the future. Is that the idea? Well, it's not providing it here. Whether there are different categories of more narrowly drawn weapons misdemeanors where you might be able to show, okay, well, if someone did this, this, in particular, indicates they're right. Let me get to this last. I do have this question, and I couldn't pick it up from your argument, and that's not clear to me exactly how you're dealing with our cases. What is the level of generality that we're supposed to look at when a state, as we've said, can permissively regulate on a class-wide basis? We've made it very clear, and the courts have made it clear, that you can regulate on a class-wide basis. When you define that class, obviously there are some classes that are too broad. All felonies in Torres Rosario, we raised some hint that that could be too broad. All misdemeanors, if Torres Rosario's language is right, would raise that similar possibility. All drug offenses has been, in the Seventh Circuit, thought to be okay. All even misdemeanor domestic violence offenses, no matter what they exactly consist of. It could have been a restraining order for just threatening words, et cetera. It doesn't have to have violent conduct in that sense. So there's a whole range of different things within each class. Here's a class which contains some very concerning things, like not having a permit for your gun at all, and some, as you suggest, that are more marginal, like whether I have the right hunting vest on. We've generally thought, at the class-wide basis, the idea is that the legislature is allowed to be somewhat imprecise in defining the class. So how are we supposed to think about that here? There doesn't seem to be much of a developed argument to us as to why this class inherently is too broad, or what standard we're supposed to use in thinking about the way the class is defined. Okay, so first of all, Judge Baron, your point is a good one, and for what it's worth, ever since I was in law school, I've been noting that exactly how you frame the issue and define the frame of reference has a huge impact in how cases get decided, and yet it's an issue where there's actually not that much in jurisprudence or academia to tell you, well, how should we frame the issue here? So the answer I would give you is, first and foremost, the starting point of analysis is, what is the statutory restriction at issue here? The restriction here is the prohibition that says, any violation that pertains to firearms use, possession, etc., for which you could be sent to jail. And the only nuance, at least at the first step of analysis, that should be introduced into that is, okay, when the general court passed this in 1998, there were already a number of prohibitions that applied under both federal law and state law. So people who were already prohibited, people who had convictions for any purpose whatsoever that were punishable by more than two years, people who had a conviction that was a violent crime that was punishable by more than one year, all those people were already excluded from licensure. The additional people we're picking up are people who have a weapons-related offense. It's not a felony because they'd already be disqualified if they were a felon. And it's also not a misdemeanor that has the use of force or violence as an element of the crime along with the one-year sentence. What's being marginally or incrementally added to the prohibition when the legislature acts in 1998 are people who solely have a weapons offense without any indication of violence and without falling into any other prohibited category. So that's where the frame of reference should be. Okay, thank you. Thank you, Your Honor. That concludes the argument in this case. Attorney Jensen, Attorney Kobach, and Attorney Austin, you can disconnect from the hearing at this time.